**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**The FIRST NATIONAL BANK AND TRUST COMPANY OF OKLAHOMA CITY, a national banking association, Defendant.**

**No. CIV–76–0247–D.**

United States District Court,
W. D. Oklahoma.

Jan. 4, 1980.

Norman E. Reynolds, Oklahoma City, Okl., Jarrel D. McDaniel, Houston, Tex., for plaintiff.

Edward E. Soule, Peter T. VanDyke, Oklahoma City, Okl., John W. Kinslow, Lawton, Okl., for defendant.

MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

On August 10, 1973 the initial Plaintiff International City Bank and Trust Company of New Orleans, Louisiana (ICB) made a loan of $1,250,000.00 to Family Loan, Inc. of Springfield, Missouri (FLI). This loan was evidenced by a promissory note and was secured by installment land sales contracts (the collateral) between an FLI subsidiary, Horseshoe Development Corporation (HDC) and a large number of individual purchasers of residential lots in Arkansas and certain guarantees. These contracts were assigned by HDC to FLI and were pledged by FLI to ICB as security for said note. The loan agreement between ICB and FLI provided that the collateral would have a principal value of not less than $2,000,000.00.

ICB and FLI entered into an escrow agreement dated August 10, 1973 which the Defendant First National Bank and Trust Company of Oklahoma City, Oklahoma (FNB) accepted as escrow agent. The relevant portions of the escrow agreement are as follows:

"1. FLI shall deliver to Agent contracts having an unpaid balance of at least Two Million Dollars ($2,000,000). FLI shall deliver to Agent its certification as to the unpaid balance and the genuineness and validity of the contracts delivered to Agent.

2. Agent shall hold said contracts until directed by ICB to release the same; subject, however, to the following instruction number 3.

3. Agent shall deliver all contracts held twice a month to FLI on a trust receipt to be executed by an officer of FLI. FLI shall review the contracts so withdrawn for the purpose of removing contracts paid in full; contracts which are delinquent more than sixty (60) days; contracts traded in; and contracts which have become eligible for FLI's Westinghouse Credit Corporation financing. FLI shall substitute other genuine and valid contracts for those removed. FLI may also record any contract while held by it on trust receipt. FLI shall promptly return the contracts to Agent certifying again the validity and genuineness of the contracts returned and that the unpaid balance of said contracts is Two Million Dollars ($2,000,000) or more.

4. Agent has no liability or responsibility as to the genuineness or validity of the contracts held or that the unpaid balance of the contracts held equals a minimum of Two Million Dollars ($2,000,000). Agent shall rely on the certification of FLI as to the status of any person signing on behalf of FLI. If FLI removes any contract on the grounds set forth in paragraph 3 above, Agent shall have the right to rely on the representation of FLI that it had the authority to make such substitution.

The following persons are authorized to sign trust receipts and substitute collateral held by Agent in accordance with paragraphs numbered 3 and 4 hereof. [listing four names]"

FLI withdrew and returned the collateral at regular intervals and no problem arose until approximately eight months after the escrow agreement was executed when FLI returned collateral with a value of less than $2,000,000.00. On February 1, 1974, FLI withdrew the collateral in the usual manner. It did not return the same until March 19, 1974. When returned the collateral only amounted to $1,756,489.92 and $96,653.59 of that did not conform to the loan agreement

as it was more than 60 days delinquent and did not qualify as collateral. ICB brought this action to recover from FNB the value of this shortage of collateral as above reflected. During the pendency of this action ICB ceased operating and Federal Deposit Insurance Corporation (FDIC), the liquidator of ICB's assets, was substituted as Plaintiff herein.

After the aforementioned escrow agreement was entered into ICB made a second loan (on October 16, 1973) to FLI in the amount of $1,800,000.00. In connection with this additional loan FLI pledged (along with other collateral) the same collateral above mentioned as collateral for the loan of $1,250,000.00. FNB was never advised of this additional loan and cross collateralization. A separate escrow agreement was not entered into with reference to this second loan. Plaintiff not only seeks herein to recover the above mentioned shortage of collateral from FNB as to the 1.25 million dollar loan but also as to the additional 1.8 million dollar loan of which FNB had no knowledge.

In this action the Plaintiff complains of alleged breach of contract (the escrow agreement) by FNB and also of an alleged breach by FNB of its duty to ICB as an escrow agent and as a bailee for hire. In support of its contentions under one or more of the above theories as grounds of recovery herein, the Plaintiff alleges as follows:

1. Defendant did not get trust receipts from FLI when collateral was withdrawn.

2. When collateral computer lists were signed by FLI (in lieu of trust receipts) the signatures were not authorized signatures and in one instance no signature was obtained.

3. Defendant did not obtain certifications from FLI each time the collateral was returned to FNB certifying that the collateral was valid and genuine and that the unpaid balance of the installment land sales contracts constituting the collateral was in the amount of $2,000,000.00 or more.

4. In lieu of certifications Defendant failed to obtain properly signed transmittal letters to FNB when the collateral was returned.

5. Defendant permitted unauthorized persons on four occasions to withdraw the collateral on behalf of FLI.

6. The retention of the collateral by FNB in a clerk's desk did not rise to the dignity of safekeeping.

7. The clerk of FNB handling this escrow account was not notified of the terms and provisions of the escrow agreement.

8. Defendant did not properly supervise the administration of this escrow account.

9. FNB (as well as ICB) had lent money to FLI (prior to the ICB loan of $1,250,000.00 and escrow agreement involved herein) and some part of the FNB loan was repaid by FLI from the proceeds of said ICB $1,250,000.00 loan to FLI.

10. Defendant failed to require the prompt return of collateral by FLI.

11. Defendant did not bill FLI for escrow fees on the prescribed quarterly basis.

12. Defendant failed to notify ICB of the above breaches of the escrow agreement.

The applicable law herein has to do with duties and liabilities under escrow agreements, the duty of an escrow agent and a bailee for hire and the interpretation of contracts (the escrow agreement involved).

28 Am.Jur.2d, *Escrow*, page 1, et seq., states in pertinent part as follows:

C. DUTIES AND LIABILITIES

§ 16. *Generally.*

Where a person assumes to and does act as the depositary in escrow, he is absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed. He is held to strict compliance with the terms of the escrow agreement; and he may not perform any acts with reference to handling the deposit, or its disposal, which are not authorized by the

contract of deposit. It is not in his province to interpret or construe a contract where he has a duty to perform; he must be guided in his duty by what the contract says. Neither is he authorized to ignore one part of the contract because another part of it omits such features as time and date. The escrow agreement or instructions constitute the full measure of the obligations assumed by the escrow holder and owing to the parties.

It has been said that the duty of an escrow holder is determined by the application of the ordinary principles of agency, whether he is considered the escrow holder with duties to both parties or the agent for the depositor alone; and he is a fiduciary and is required to exercise reasonable skill and ordinary diligence. It has also been said that, in his fiduciary capacity, the escrow agent must conduct the affairs with which he is entrusted with scrupulous honesty, skill, and diligence. As a fiduciary, the depositary may be charged with a duty to make disclosure to a party to the escrow where such is required to prevent a loss to such party.

.    .    .    .    .

§ 18. *Liability for breach of duty, generally.*

.    .    .    .    .

Questions as to whether the escrow agent has violated the conditions of the escrow agreement and the assessment of any damages for such violation are questions for the jury.

.    .    .    .    .

§ 20. *Who must bear loss resulting from defaults or wrongs of escrow holder.*

As a general rule, a loss occasioned by the default, peculation, or similar wrong of an escrow holder, must, as between the parties to the escrow transaction, be borne by the one who, at the time of its occurrence, was lawfully entitled to the right or property affected, and this is true irrespective of which party selected the escrow agent. Ordinarily, the question as to who is entitled to the right or property affected depends upon a determination whether there has been timely satisfaction of the condition of the escrow prior to the loss, or a determination of whose agent the escrow holder is at the time of the loss, applying the equitable principle that where one of two innocent persons must suffer from the wrongful act of a third, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong.    .    .    .

However, it has been held that the general rule as to which party must bear the loss is not applicable when the act or negligence of one of the parties is the basic cause of the loss or is a factor without which the loss would not have occurred; in such a situation, the general principle that where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer, is applicable. Moreover, the rule that where the escrow agent defaults prior to performance of the escrow condition the loss falls upon the depositor is subject to an exception, where under the circumstances of the escrow agreement the depositor would not be entitled to the return of the subject matter under any circumstances, irrespective of performance of the terms of the agreement.

28 Am.Jur.2d, *Escrow* § 3 states in pertinent part as follows:

Where the language of an escrow is vague and indefinite, however, it is the duty of the court to inquire into the circumstances and conditions surrounding the execution of a written escrow agreement to ascertain the intention and actual meaning of the parties.

28 Am.Jur.2d, *Escrow* § 42 states in pertinent part as follows:

The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. It does not prohibit an inquiry into the object of the parties in executing and receiving the instrument.

30A C.J.S. *Escrows* § 8, page 991, states in pertinent part as follows:

b. *Liabilities*

*A depositary is liable for a breach of the duties assumed by him under the terms of the escrow contract.*

The liability of a depositary or escrow holder is both fixed and limited by the contract under which he undertakes to perform the impartial function of stakeholder. So, a depositary is not liable for failure to comply with instructions or provisions of a contract between the depositors to which he has not assented and is not bound. On the other hand, if he violates duties assumed under the terms of the escrow contract or instructions, he is liable in damages for the loss suffered thereby, unless it appears that his wrongful act has been ratified by the injured party. He is liable for his negligence, as in caring for the property deposited with him, or for breach of duty of good faith toward the depositor in personally acquiring such property at an inadequate price, or for conversion in delivering escrows in violation of the escrow agreement as discussed infra § 11; and he may be compelled to deliver the instrument to the grantee or obligee where the latter has complied with all the conditions of the escrow, infra § 15.

Generally, no liability attaches for the depositary's failure to do something not required by the terms of the escrow, or for a loss incurred while obediently following the escrow instructions without neglect or fraud. Also, a depositary is not liable for failure to inquire concerning the authority of an agent of certain of the parties making the deposit; . . . (Footnotes omitted)

█ As is the case of an escrow agent the duty of a bailee for hire in Oklahoma is to use ordinary care for the preservation of the thing bailed. In this connection, 15 Okla.Stat. § 466 provides as follows:

§ 466. *Bailee for hire—Ordinary care required*

A bailee for hire must use at least ordinary care for the preservation of the thing bailed.

The Oklahoma Statutes also provide that the duties and liabilities of a bailee rendering services may be regulated by contract, which in this case means that the duties and liabilities of the escrow agent are regulated by the provisions of the escrow agreement involved. In this connection, 15 Okla.Stat. § 459 provides as follows:

§ 459. *Duties and liabilities of bailee rendering services*

The duties and liabilities of a bailee by whom services are rendered or of whom services are required on the thing bailed are subject to the general laws of the State, and may be regulated by contract.

The Statutes of Oklahoma pertaining to the interpretation of contracts afford guidance to the Court in ascertaining the intent of the contracting parties in this litigation and how the escrow agreement involved herein should be construed.

15 Okla.Stat. § 152 provides:

§ 152. *Intent controls*

A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful.

15 Okla.Stat. § 154 provides:

§ 154. *Language governs*

The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.

15 Okla.Stat. § 160 provides:

§ 160. *Words to be taken in ordinary sense—Exceptions*

The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.

And the cases of *Sternwear Tire & Tube Co. of Oklahoma v. Marion Tire & Rubber Co.*, 88 Okl. 117, 212 P. 134 (1923) and *Mann v. Brady*, 80 Okl. 299, 196 P. 346 (1921) hold that when the terms of a written contract

are plain and simple, and the language clearly shows the intent of the parties, there is no need to apply technical rules of construction.

15 Okla.Stat. § 162 provides:

§ 162. *What law governs*

A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

This Statute indicates that the law of Oklahoma applies to this controversy contrary to the claim of Plaintiff that the law of Louisiana governs the escrow agreement.

15 Okla.Stat. § 163 provides:

§ 163. *Circumstances explain*

A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.

15 Okla.Stat. § 164 provides:

§ 164. *Terms restricted to intention of parties*

However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract.

## TRUST RECEIPTS

The escrow agreement provided that FLI could withdraw the collateral from FNB twice a month on a *trust receipt* from FLI for the collateral.[1] This collateral was extensive (over 400 contracts) and was listed and managed by being computerized. When FLI withdrew the contracts then in escrow, its representative would sign a computer listing of the withdrawn collateral. FNB retained the signed computer listing as a receipt from FLI for the listed contracts so withdrawn. The Court finds that such receipts obtained by FNB complied with the requirements of the escrow agreement and the intent of the parties thereto. The Court concludes that the loan agreement between ICB and FLI was not the type of financing, floor planning or otherwise, in which the term "trust receipt" was developed. In that type of transaction all that is required is a receipt for property placed with the debtor but in the same the debtor must recognize title thereto in another, usually a financing institution. In this case the title to the contracts was in FLI, the debtor, not ICB. Hence, there was no technical need for such type of receipt and such would not be appropriate under the facts and circumstances of this case. FLI merely pledged the contracts and a simple receipt of a list of same upon withdrawal was sufficient to comply with the intent of the parties notwithstanding the use of the technical words "trust receipt" in the escrow agreement. This was simply not a "trust receipt" type transaction. 68 Am. Jur.2d, *Secured Transactions*, §§ 122–125 at pages 964–971.

The Court therefore concludes that the receipts employed herein were sufficient to satisfy the intent of the contracting parties in light of the loan agreement and the escrow arrangement. Hence, the contract was not breached in this regard and the procedure utilized also satisfied the requirement of ordinary care on the part of FNB as an escrow agent and bailee in obtaining signed evidence in the form of a receipt for collateral withdrawn by FLI. Moreover, ICB did not suffer a shortage of collateral for lack of a trust receipt or any other kind of receipt. If it could be said that a proper receipt was not obtained by FNB, such was not the proximate cause of any shortage of collateral to ICB. The shortage suffered was from the failure of FLI to make the required return of collateral—not the withdrawal of same. Therefore, this contention of Plaintiff is without merit as a ground of recovery herein against the escrow agent.

## IMPROPER SIGNATURES ON COMPUTER LISTINGS

This asserted ground for recovery herein is related to the preceding ground and the subsequent ground regarding the alleged failure of FNB to obtain authorized signa-

1. The loan agreement only called for a *receipt*.

tures from representatives of FLI. This ground is without merit. Those signing computer lists for FLI were certified as authorized to do so as shown below. Also as shown above and as shown below, no shortage of collateral was sustained by ICB through the alleged failure of FNB to either get proper receipts for withdrawn collateral or an authorized signature on receipts from representatives of FLI. The shortage suffered was from the failure of FLI to make the required return of collateral—not the withdrawal of same. Hence, there was no breach of contract or duty by FNB in this respect which proximately caused any shortage of collateral to ICB. This contention affords no ground for recovery herein by the Plaintiff.

CERTIFICATIONS

Plaintiff contends that Defendant failed to obtain from FLI each time the collateral was returned a certification that the collateral was valid and genuine and that the unpaid balance of the same was in the amount of $2,000,000.00 or more. Plaintiff asserts this breached the contract and duty owed by FNB as an escrow agent and bailee and entitles Plaintiff to recover herein.

The evidence discloses that each time FLI returned the collateral to FNB the same was accompanied by a new or revised computer listing which showed the unpaid balance of the listed collateral to be in excess of $2,000,000.00 (except the last return of collateral on March 19, 1974) and in addition there was a transmittal letter to FNB signed by a representative of FLI in which the collateral or loan agreement was referenced and in which FLI stated that the collateral required by the same (". . . with a principal value of not less than $2 million.") was delivered therewith. The Court finds that such procedure complied with the certification provision of the escrow agreement. The revised computer listings of collateral with the unpaid amount thereof shown at the bottom to be in excess of $2,000,000,00 and the transmittal letters satisfied the intent and requirement of the escrow agreement that the returned collateral be certified by FLI to be genuine and valid and in an amount not less than $2,000,000.00. Hence, there was no breach of the escrow agreement in this regard and the procedure utilized satisfied the duty of ordinary care on the part of FNB as an escrow agent and bailee. Moreover, except for the last return of collateral ICB did not suffer a shortage of collateral for lack of a certification and if it could be said that a proper certification was not obtained by the FNB, such was not a proximate cause of any shortage of collateral to ICB. Furthermore, the escrow agreement provides that the FNB has no liability or responsibility to ICB as to the genuineness or validity of the contracts held by it or that the unpaid balance of the contracts held by it equals a minimum of $2,000,000.00. This responsibility rested solely between FLI and ICB according to the terms and provisions of the escrow agreement. It is therefore quite clear that as FNB would have no liability or responsibility to ICB for false certifications of FLI, it should have no liability to ICB on the type of certifications obtained. As to the last certification from FLI, which was the only one which reflected less than the required $2,000,000.00 in unpaid balances, the FNB would have no responsibility for this shortage by virtue of the specific terms of the escrow agreement which relieved FNB of any such responsibility. Also, this stated shortage was known to ICB at the same time it was revealed to FNB by the certification of FLI for ICB received a copy of the same. Therefore, this contention of Plaintiff as a basis for recovery herein is without merit.

IMPROPERLY SIGNED TRANSMITTAL LETTERS

This asserted ground for recovery herein is related to the preceding ground and the subsequent ground regarding the alleged failure of FNB to obtain authorized signatures from representatives of FLI. This ground is without merit. The escrow agreement relieved FNB of responsibility regarding who signed for FLI. This agreement provided: "Agent [FNB] shall rely on the certification of FLI as to the status of

any person signing on behalf of FLI." The escrow agreement listed four authorized signers for FLI. One of these in December, 1973, certified to FNB the other persons involved for FLI as authorized signers for FLI. This is in compliance with the escrow agreement and the duty of FNB as escrow agent and bailee. Moreover, as shown above and below, no shortage of collateral was sustained by ICB as a proximate cause of the alleged failure of FNB to get properly signed certifications (or transmittal letters) on return of collateral. Hence, there was no breach of contract or duty by FNB proximately causing a shortage of collateral to ICB in this regard. In addition FNB by the terms of the escrow agreement between the parties had no responsibility to ICB if the returned collateral at any time had an unpaid balance below $2,000,000.00. This contention affords no ground of recovery herein for the Plaintiff.

AUTHORIZED PERSONS FOR FLI

Plaintiff contends that Defendant breached the escrow agreement on four occasions by allowing withdrawals of collateral by unauthorized persons. The escrow agreement listed four persons [2] as being authorized to withdraw collateral for FLI. The escrow agreement also provided that FNB ". . . shall rely on the certification of FLI as to the status of any person signing on behalf of FLI." One of the four persons listed in the escrow agreement was James H. Savage. In December, 1973 James H. Savage introduced John L. Francis to FNB as the person who would thereafter be withdrawing and returning the collateral for FLI. Thereafter, Mr. Francis did the withdrawing and did the signing for FLI. Also over his signature for FLI, lists of collateral returned to escrow were sent to ICB at least three times without complaint by ICB of his lack of authority. On one occasion a true representative of FLI named Emslie withdrew the collateral. Mr. Savage also introduced him to FNB as a representative of FLI authorized to withdraw the collateral. By the escrow agreement provision that FNB shall rely on the certification of FLI as to the status of a person signing on behalf of FLI, FNB had the right to rely on the advice of Mr. Savage, who was listed as an authorized representative of FLI, that Mr. Francis and Mr. Emslie were authorized to sign for FLI. Plaintiff has failed to produce any evidence herein that any withdrawals or returns of collateral between FLI and FNB were handled by any person other than a true representative of FLI.[3] There were no misdeliveries, diversions or conversions of the collateral. All collateral withdrawals were withdrawn by FLI by its authorized agents. The escrow agreement was not breached in this regard nor did FNB violate its duty as escrow agent or bailee in this regard. The Court also finds that ICB suffered no shortage of collateral as a proximate result of who signed for FLI for the withdrawal of the collateral and certified the same upon its return to FNB. All who signed for withdrawals and returns of collateral were not only within the authority of the escrow agreement between the parties, but any irregularity in this regard (the Court finding none) was not the proximate cause of any collateral shortage to ICB.

SAFEKEEPING OF COLLATERAL

This asserted ground for recovery herein is without merit. Plaintiff presented no evidence which in any way indicates that the complained about shortage of collateral to ICB was brought about by a lack of diligence or care in the safekeeping of the same when in the hands of FNB. Except when being worked on or withdrawn, the collateral was kept in a vault. The shortage was caused by the failure of FLI to

2. Only one was an officer of FLI.

3. Guy Harrell, Senior Vice-President of ICB, testified that it made no difference to ICB who got the collateral as long as it went to FLI and that all collateral surrendered by FNB did go to FLI. He also testified that it made no difference to ICB for Mr. Francis to sign the transmittal letters with computer listings on return of collateral and ICB made no inquiry when Mr. Francis signed three such transmittal letters with collateral lists to ICB.

return the required amount of collateral on March 19, 1974–not the safekeeping procedure of FNB.

NOTIFICATION TO DEFENDANT'S CLERK OF TERMS OF ESCROW AGREEMENT

This asserted ground for recovery herein is without merit. Plaintiff presented no evidence which in any way indicates that the complained about shortage of collateral to ICB was proximately caused by the alleged failure of FNB to expose its clerk handling this escrow account to the terms and provisions of the escrow agreement. The shortage of collateral was caused by the failure of FLI to return the required amount of collateral on March 19, 1974–not the Defendant's procedure in notifying its clerk about the terms and provisions of the escrow agreement.

SUPERVISION OF DEFENDANT'S CLERK

This asserted ground for recovery herein is without merit. Plaintiff presented no evidence which in any way indicates that the complained about shortage of collateral to ICB was proximately caused by the manner in which FNB supervised its clerk who handled this escrow account. The shortage of collateral was caused by the failure of FLI to return the required amount of collateral on March 19, 1974–not the Defendant's supervision of its clerk handling this escrow account.

FNB LOAN TO FLI

This asserted ground for recovery herein is without merit. It appears that FNB had also lent money to FLI and perhaps this loan or a part thereof was repaid in some way from the ICB loan of $1,250,000.00 to FLI. But the Court fails to see any relevance of this circumstance to the merits of this litigation. The Court notes that Plaintiff makes no claim herein of dishonesty or fraud against FNB. Plaintiff's evidence fails to show any causal connection, illegality or relevance between this event and the events of this litigation. It is merely a circumstance with no connection to this case and affords Plaintiff no ground for recovery herein.

FAILURE OF FNB TO REQUIRE THE PROMPT RETURN OF COLLATERAL

ICB agreed as shown by the terms of the escrow agreement that FLI could withdraw from FNB as escrow agent the collateral which secured ICB's loan and do so two times a month. ICB further agreed that upon withdrawal, FLI could remove and add to the list of collateral and the escrow agreement further provided that FLI (not FNB) would promptly return the collateral as revised by FLI to the bank as escrow agent of the parties. The collateral, being numerous, was computerized for ease in handling. This procedure was known to ICB, for it received copies. When withdrawn the collateral was identified by a computer list and such list was used as a means of receipting for contracts withdrawn. As set out above, this has been deemed a proper means of discharging this function under the escrow agreement and FNB's duty as an escrow agent and bailee. Upon return of the collateral a revised computer list showing at the bottom thereof the unpaid balance of the collateral listed therein with a transmittal letter for the same was used to accomplish the return of collateral and the certification provision of the escrow agreement. As set out above, this has been deemed a proper manner in which to discharge this function under the escrow agreement and FNB's duty as an escrow agent and bailee.

Notwithstanding the clear terms and provisions of the escrow agreement establishing the right of collateral withdrawal by FLI and placing responsibility for the return thereof on FLI, the Plaintiff requests the Court to hold the escrow agent liable to it for the value of any shortage of collateral brought about when FLI withdrew the collateral pursuant to the agreement of ICB and FLI and did not promptly return the same to FNB with an unpaid balance of not less than $2,000,000.00. Plaintiff overlooks the simple but highly pertinent fact that

the duty to make prompt return of the collateral by agreement of the parties was placed on FLI, not FNB, the escrow agent. And from a logical viewpoint, how could the FNB promptly return something it did not possess or cause or require an entity over which it had no control to effect such return? Plaintiff arranged and agreed to the collateral withdrawal provisions of the escrow agreement and thereby permitted the surrender of the custody of its loan security to the possession of its debtor. In this connection, the escrow agreement provided: "FLI shall promptly return the contracts to agent . . . " Plaintiff is responsible for this risky procedure and should bear the responsibility for the wrong of its debtor. It would be indeed foolhardy for an escrow agent receiving a few hundred dollars a year in escrow fees to agree to become liable to ICB for $2,000,000.00 worth of collateral which FLI had the right to withdraw should FLI fail to promptly return the withdrawn collateral in the required amount. Yet this is the substance of the request ICB makes herein to the Court. For the Court to recognize and enforce this claim of ICB, it would not only place the "prompt return" responsibility on FNB when by contract of the parties the same was placed solely on FLI, but it would place an incredible and absurd interpretation on the intent of the contracting parties. Moreover, unquestionably to avoid the absurd result now urged herein by ICB, the escrow agreement of the parties provides that the escrow agent has no liability or responsibility to ICB should FLI not return collateral or contracts with an unpaid balance of $2,000,000.00 or more.

With no hesitation, the Court rejects this improper, unfair, unwarranted and inequitable claim of ICB as being contrary to the terms of the escrow agreement of the parties and in the circumstances beyond the duty of ordinary care and diligence on FNB as the escrow agent and bailee of the collateral. As shown by the authorities, *supra*, the duties of an escrow agent and bailee are governed and regulated in this case by the terms and provisions of the escrow agreement.

## DEFENDANT'S FAILURE TO BILL FLI FOR ESCROW AGENT CHARGES ON THE PRESCRIBED QUARTERLY BASIS

The Court fails to see the relevance of this asserted claim as the basis for Plaintiff's recovery herein. The escrow agreement provided that FLI was responsible to pay FNB's escrow fee on a quarterly basis. Apparently when ICB revoked the withdrawal provision of the escrow agreement on March 25, 1974 and later demanded of FNB the collateral on hand, the FNB demanded its unpaid escrow fees as a prerequisite to delivery of said collateral and ICB paid the small amount involved. It appears that this position of FNB was based on its right to a banker's lien on the collateral in its possession. This payment of escrow fees to get possession of the collateral made after the shortage of collateral was evident and FLI had taken bankruptcy could not serve to change the rights and liabilities of the parties with reference to such shortage in collateral as the same then existed to the knowledge of all. By demanding and receiving a few dollars in escrow fees, Plaintiff would urge that this makes the Defendant liable to it for over $300,000.00. Plaintiff has not shown or urged that FNB had no valid banker's lien on such collateral. This claim is without merit as presented herein.

## FAILURE OF DEFENDANT TO NOTIFY ICB OF THE ABOVE BREACHES OF THE ESCROW AGREEMENT

As shown by the foregoing the Court has not found breaches of the escrow agreement by FNB as claimed and urged herein by Plaintiff. Hence, there were no breaches of the escrow agreement by FNB about which it should notify ICB. Specifically, the Court has found the withdrawal of collateral by FLI, the receipting for the same, the certification upon return regarding the same, the persons withdrawing and signing for such collateral on behalf of FLI, the safekeeping of the collateral and supervision of the escrow agreement by FNB, the

lending of money by FNB to FLI, the billing by FNB for escrow fees, and the failure of FNB to require the prompt return of collateral, not to have been accomplished in such manner as to constitute a breach of the escrow agreement by FNB, as escrow agent. In addition, the Court specifically finds that none of the above matters as accomplished constituted a breach of the escrow agreement by FLI save and except its failure to promptly return the collateral following its withdrawal on February 1, 1974 in the required amount.

As previously stated, the duty to make prompt return of withdrawn collateral was imposed by the escrow agreement on FLI and not on FNB. But the Plaintiff complains that when FLI failed to promptly return the collateral after the February 1, 1974 withdrawal and kept the same for some six weeks, FNB should be liable and responsible to ICB for the shortage of collateral when the same was finally returned. This claim is based on the alleged failure of the FNB to notify ICB of FLI's failure to make a prompt return of said February 1, 1974 withdrawal of collateral.

It should first be noted that there is no provision in the written escrow agreement subscribed by the parties which imposes a duty on the FNB to give such notice to ICB. Therefore, such a duty would have to be found outside the escrow agreement and hence within the duty of an escrow agent or bailee to exercise such care as an ordinarily prudent person would have exercised under the circumstances then and there existing. The evidence reveals that from the start it was arranged by ICB that FLI would not only send computer lists of returned collateral following withdrawals to the escrow agent but would also send a copy to ICB. Thus, ICB developed its own procedure directly with FLI to ascertain the status of withdrawn collateral and returned collateral and the unpaid balance of the installment contracts.[4] The evidence also reveals that FNB knew of this arrangement between FLI and ICB. As FLI regularly withdrew the collateral each month and returned the same with revised computer lists and transmittal letters with ICB receiving copies thereof, ICB maintained its own system to assure FLI compliance with the escrow agreement. This was necessary as FNB had been relieved by the terms of the escrow agreement of any liability for the shortcomings of FLI regarding withdrawn collateral. The evidence further reveals that under this procedure when ICB received no revised computer list with transmittal letter in February, it became alert that something was amiss and made inquiry of FLI. FLI incorrectly assured ICB that the collateral had been returned to the escrow agent. But ICB made no inquiry upon receipt of this information of the escrow agent. ICB took the word of FLI. This is evidence that ICB did not look to FNB for notification as now claimed in this litigation. It took no other action and slept on the situation until it received the March 19, 1974 revised computer list from FLI and learned of a collateral shortage. This information was received by FNB and ICB at substantially the same time.

In the circumstances of this case the Court finds no contractual requirement of notification of any kind between FNB and ICB; finds no contract breaches by FNB about which to notify ICB and finds that under the terms and provisions of the escrow agreement and the known arrangement whereby ICB received the same computer listings upon FLI returning collateral as did FNB, that the Defendant acted herein as an ordinarily prudent person would have acted under these circumstances. This contention of Plaintiff is without merit and affords no ground for recovery herein by Plaintiff.

From an application of the pertinent rules of law to the evidence presented herein the Court determines that the Plaintiff has failed to establish a case of liability on

4. By an Interoffice Memorandum of August 11, 1973 from Guy Harrell, Senior Vice President of ICB to its Collateral Department, such department was told that it should receive trial balances of the collateral twice a month and it should audit the same. The first such trial balance was furnished with said memorandum.

the part of the Defendant as escrow agent and bailee for the shortage of returned collateral. The Court finds no breach of the escrow agreement by the Defendant, finds the collateral shortage to be the sole fault and responsibility of FLI and finds that the Defendant as escrow agent and bailee exercised ordinary care and diligence under the terms of the escrow agreement and all the circumstances of this case in the manner in which it handled the escrow account. Where one of two innocent people (ICB or FNB) must suffer for the wrong of a third (FLI) the loss should be borne by the one (ICB) who put the wrongdoer (FLI) in a position of trust and confidence and thus enabled it (FLI) to perpetrate the wrong. Defendant is therefore entitled to judgment herein dismissing Plaintiff's action.

■ It is not believed that Plaintiff's action herein for breach of contract and duty by Defendant falls within any of those civil actions listed in 12 Okla.Stat. § 936[5] which would entitled Defendant as prevailing party to recover a reasonable attorney's fee. Though FNB performed services under the escrow agreement sued on herein, Plaintiff's action is not a civil action to recover for such labor or services. It appears that FNB has been fully paid for its services as escrow agent. Defendant's request for recovery of a reasonable attorney's fee herein should therefore be denied.

An appropriate judgment will be entered herein by the Court by separate document. Rule 58, Federal Rules of Civil Procedure.

---

**5.** § 936. *Attorney fees taxed as costs in actions on certain accounts, bills and contracts*

In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.